Our next case this morning is In Re, the estate of Timothy C. Bedinger. Case number 5-24-0566. Representing the appellant is Mr. Moran. Representing the appellee is Mr. Reese. Are counsel ready to proceed? Mr. Moran? I am, Your Honor. Mr. Reese?  All right. Mr. Moran, you may go first. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, my name is Bill Moran. I represent the executor of the estate of Timothy C. Bedinger, his son, appellant, Bradley C. Bedinger. In this instance, the case originally presented a very interesting issue concerning the intersection of Illinois probate law and ERISA, the Employee Income Security Act. But at the trial court, after the parties had briefed the ERISA issue and the preemption issue extensively, the trial court took a different tact. It looked at what it thought was intent, so instead of just focusing on legal issues here, I have to talk about the facts a little bit. Timothy C. Bedinger, the decedent, was married to his first wife, Lori, for over 35 years. During that period of time, he worked consistently and accumulated a very significant 401k pension account which had about $600,000 in it. When Lori, the decedent's first wife, reached her early 50s, she was diagnosed with cancer and passed away in 2017, again, after being married for over 35 years to Mr. Bedinger. At the time that she passed away, she hadn't been able to enjoy the fruits of her husband's labor by any distribution from the 401k account. About a year after his first wife passed away, Timothy Bedinger married his second wife, Lee Bedinger, who is the respondent and the appellee in this case in 2018. Unfortunately, seven months after they were married, Mr. Bedinger was diagnosed with cancer. About two months after he was diagnosed with cancer, he sat down and he did his last will and testament. He has a very detailed portion related to his 401k account, which is by far the largest asset in this man's estate. In fact, if the 401k doesn't come into his estate, there's a real question about whether the estate in this instance is even liquid. In his last will, he sat down and he specifically mentioned his first wife. He mentioned that the pension account had $600,000 in it and he said the first half, which he called her half, his first wife Lori, he said, I want to go to my three children, who are the three children that the decedent had with his first wife. He then said, with basically my half, I want to split that money four ways, between my three children and my present spouse, Lee Bedinger. After the will was entered, there is no question here that pursuant to ERISA, Lee Bedinger did not go to the pension plan and filed a very specific waiver that's required under federal law, which is written, notarized on the form that the pension has, submitted to the pension and filed before the individual's death. She didn't do that and there's no question that she did that and waived her right under ERISA because ERISA says an account like this, if there has not been a waiver by the spouse, is payable 100% to the surviving spouse. In this instance then, what happened is, is that after they were married for approximately a little less than 18 months, Mr. Bedinger passed away. Lee filed an application with the pension plan. They paid out in a single check to her and said, here you go. In this case, the executor has filed a recovery citation requesting that the probate court order that Lee deliver those funds to the executor and the court so that they can be distributed pursuant to the decedent's will. She has resisted that by saying that there is a preemption argument in this instance and that in this case, she is entitled to keep all of those funds and the estate isn't. The trial court here ruled, it said it looked at intent. It didn't look to the will that was executed seven months before this man's death. It looked at the fact, it said that he didn't go to the pension plan and he didn't change his beneficiary. Therefore, the trial court found that in this instance, he didn't want his pension account to be paid into his estate and distributed pursuant to his will. The problem with that is that it was impossible for Tim Bedinger to go to his pension plan without his wife's waiver signed, notarized, in hand that she waived. In this case, the one thing there is, is no question that she didn't sign the waiver and she was not going to sign the waiver. Her position throughout this entire proceeding is that she should receive the entire $600,000. No matter what standard you look at that under, whether it's a factual standard and it's the manifest way to the evidence or if it's a legal standard about what ERISA requires, the trial court's ruling in this instance needs to be reversed. Then, to decide this case, this court has to get to the ERISA issue. ERISA is one of those things, you know, you hear it and you go, maybe like that first case, the ICC record of 27,000 pages. The statute alone in one of the instances here is 68 pages long, but it's actually a pretty easy concept when you look at it. I'm going to point to three cases. Before we get into that, let's back up a second and talk about jurisdiction. There were originally three counts filed, is that correct? Count 1 dealt with the residents, Count 2 was the personal property, and Count 3 was the IRA. Are Counts 1 and 2 still pending? No. What happened to those? The house was resolved and the personal property is again resolved. All right. So those counts were dismissed as part of the resolution then? I believe so, Your Honor, or abandoned by the parties. They were very minor compared to the third issue. All right. Thank you. If you look at the case law, and again, the parties have ... Before you address the issue of ERISA and coemption, can you discuss a little bit about the Third Party Beneficiary Contract Act, I believe it is. Yes. Because doesn't that statute, the Third Party Beneficiary Contract Act, doesn't that preclude any type of will or probate action that would govern essentially the disposal of or the intestate transfer of retirement claims? How do you get around that? Again, Your Honor, there is not a single decision in any court that I could find anywhere that said that the Third Party Contract Benefit Act would apply in this circumstance, and that it preempts the authority of the probate court, which in a recovery citation is equitable in nature, that it would prohibit a probate court from acting in a circumstance like this. But couldn't it be that the clear language of the statute speaks for itself? Doesn't it clearly say? My position on that is, Your Honor, I don't think it clearly says anything. It's really tough, and it hasn't been, no court has looked at it. No court has interpreted. Well, it's been cited by six different courts. It has, but if you look at those cases, they don't have anything to do with what we have here in this circumstance. Again, facially, there's some words that back up, like beneficiary, but there's no proof that the legislature intended in a case like this to strip somebody like Tim Bedinger of the hardest asset that he had to work for during his whole life, the largest asset that he had, and that this statute gives the court the right to say, Nope, you don't get to control how that is distributed. Despite the fact that you were married to your first wife for 35 years or more, despite the fact that you have three children, despite the fact that you were only married to 18 months to your surviving spouse, in this case, there's no indication that that's what this statute was intended to do. There was no testimony presented to the trial court for these hearings, was there? There wasn't, because basically the facts were pretty much stipulated to. So it's a question of law rather than fact before us. It really is, and that's where I think we get to preemption and the three cases I wanted to talk about. The first one is the one that facially looks like it's the best for Lee Bedinger, the appellee, that's the Boggs decision. It's a United States Supreme Court decision from 1997. The holding in that case was ERISA preempts a state law allowing a non-participant spouse to transfer by testamentary instrument an interest in undistributed pension benefits. It was a situation in Louisiana. There was a divorce. There were children. There was an ex-wife who wanted to, by will in a community property state, provide benefits for her children. In that instance, what she was really wanting to do is tell the pension plan who the defined benefit pension payments. This wasn't a lump sum case. It was a defined benefit case where there are monthly payments, and she wanted that employer in that plan to direct payments to somebody other than the participant. And so in that case, the United States Supreme Court said that state law relates to and preempts ERISA plan if it has a connection with or reference to such a plan. The next case I cited was the Redder case. It's a federal district court case out of Massachusetts. And the reason I cited it mostly is that it's basically a treatise on this issue of preemption and what relates to something where ERISA is going to preempt. So at the bottom, and I know you're not supposed to read, but I'm going to read. At bottom, ERISA preemption applies when a state law mandates employee benefit strictures or their administration, not what we're doing here, binds employers or plan administrators to particular choices or precludes uniform administrative practice or provides alternate enforcement mechanisms for employees to obtain ERISA plan benefits. So in this case, what happened is there was one application, there was one check. If you have a pension plan and its administrative costs rise, all the pension benefits go down. It hurts all of the individuals in the plan. And that's whether it's an insurance plan, whether it's an annuity plan, whether it's a lump sum plan. And so Congress, through ERISA, tries to make everything uniform across all 50 states so that these administrative, and it's called an administrative accommodation in a lot of places, that that accommodation makes things flow smoothly in front of the pension plan but doesn't preclude states from enforcing their police powers. And that's the last opinion I have, which is the Griffin divorce case, which is a decision out of the Supreme Court of Virginia. In that case, in 2015, in that case there was a 401k account. It was not an annuity, as in Boggs. There was a divorce. Two children were to be named as beneficiaries by the husband. The husband, excuse me, can I? Well, you're reading that. The husband remarried and named his new wife as the beneficiary. The husband died and the first wife made a claim for the children saying they should receive this lump sum payment that went out. The second wife argued preemption under ERISA. And there's a thorough discussion in Boggs and what the Virginia court basically said is there's a huge difference between a defined benefit pension and a lump sum payment. If it's a lump sum payment, there isn't preemption. There isn't non-alienation. And in this case, which was sought for this case and denied by the United States Supreme Court, that the Virginia court said in this instance that preemption doesn't apply and the children were awarded the funds. Same thing that we would request happen in this case. Is there anything in the record that indicates Timothy knew that Lee was his designated beneficiary of the 401k? There really isn't, Your Honor. So we don't know if at the time he made the will since his first wife died, he thought there was no beneficiary or we don't know if he knew Lee was not? We don't know at all. And probably some of that stuff might have been barred by the Dead Man's Act even if there was evidence concerning that. Is there any evidence Lee was present when Timothy executed his will in 2019? No. Is there any evidence there was ever an oral agreement by Lee prior to Timothy's death that she would share the 401k with the children? No. There's no evidence of that, Your Honor. It's always been, her position's always been that she gets the whole thing. All right. Thank you. Thank you. Quick question. I'm sorry. You mentioned before that the fact that there was a legal impossibility because the concerns had to be signed by the wife. But your client was, in fact, no longer employed with the company. Is that correct? And Lee has brought that fact up and said that there was a choice at that time to cash in the account, pay the taxes that would have been due on it because, and they would have been substantial or he could have rolled it over. My argument in response to that question is he had his will already done. He had specific instructions, detailed instructions about what was to happen. So he most likely felt comfortable that he had taken care of that issue. But characterizing it as an impossibility is probably not an accurate statement. Would you agree? That he could do it himself. There were options that could have been made. Yeah, I agree. Okay. Thank you. Thank you, Justice Mulcahy. No. All right. Thank you. We have an opportunity for a bottle of water. Reese, you ready for change? Yes, sir. Good. I don't know if it's afternoon. It is. Good afternoon, Your Honors. This is my first oral argument in appellate court so I will probably have peanut butter in my mouth like a dog, too, trying to get this done. In any event, the case really revolves around whether a will bequest can defeat ERISA's surviving spouse provisions. These provisions are spelled out pretty clear and they're in our briefs. The trial judge heard them all and we argued this extensively. The executor argued that the ruling was not specific but he did say that the ruling specifically says the federal law is clear that my client should get the proceeds of the 401K. So I don't know how much more clear you can be on that. And he claims on page 19 that the judge didn't consider his arguments. That the trial court believed the defendant could simply change the beneficiary of the 401K without more. But there's no evidence, there's no proof that how he would know what the court believed in the first place is rather strange. But I don't really understand why he didn't say that since he could change jobs and there were possibilities to change the beneficiary. That's just not true. As we go on down to his unjust enrichment claim trying to create a constructive trust, there's no implied or quasi-contract here to establish a constructive trust. There's no duty, there's no consideration. It was a gift. You know the donees weren't owed anything. It was an uncompleted gift actually. So there's no basis for a quantum mirror type of action like an unjust enrichment here. There's just nothing behind it. Now he's mentioned several cases. Most of these cases all involve a family law contract of one kind or another. And usually they involve 1056 D3A which allows an exception for quadros. And the courts have kind of gone around in circles on the quadro issue over time. But in our case we don't have any underlying family contract or any other contract of any nature other than my client's recipient of the 401K contract in agreement. How do you distinguish the Anderson case? I think Anderson is pretty easily distinguished because Hopkins knocks it out. Because Anderson is an administrative accommodation case that did not have any surviving spouse provisions. It had a different purpose. The act was different. It was the Postal Life Insurance Retirement Act or something back in 1930. And they really hit the surviving spouse issue pretty hard in that legislative intent. And Boggs brings that out and so does my brief. So I think most of these are going to be 1056 D3A except for Anderson. And there's a few other ones that are a little bit strange. We don't have that kind of basis here. And Hopkins specifically does reject Anderson because of ERISA and ERISA benefits and explains it in his brief. However, Hopkins did allow in Hopkins' case it was an anti-nuptial agreement which Hopkins found to be a waiver. We don't have an anti-nuptial agreement here. So in Hopkins they did pay it out but it was due to an anti-nuptial agreement not a 1056 D3A quadro. I think the executive brought up Hohu and Griffin which I didn't really respond to because they're both family court orders. And actually both of them are rather strange that both quadros entered after death. In the Hohu case there's a temporary restraining order about when he transferred the funds and so the court indicated that family law orders are paramount. And so they created an after death quadro in both the Hohu and the Griffin case that you mentioned. Both cases also, quote, the Kennedy case and state, I know you're not supposed to read but I'll do it too. When a party breaks a property agreement by failing to name beneficiaries on ERISA government accounts it can only be enforced by a quadro. We don't have a quadro here because this doesn't relate to anything. He's just trying to knock out the statutory provisions by writing a will. I mean if he could do that there'd be no point in having these spousal provisions that make sure that you have a steady stream of the spouse if you just wipe them out by your will. I guess you can wipe out renunciation of the will too, perhaps. There are will benefits. Anything could be unjust enrichment on his basis. Because if it's in the will he basically says then it's a contract. I guess he's saying it's a contract. I don't know. And it can be enforced. But it can't be enforced because it's only a gift and there's a pre-existing 401k agreement that limited his ability to give that away. So I don't really see the I don't see how that would apply. The Boggs case now that's the case of course that I like and Boggs does really go into the spousal provisions here in the Act and they specifically even mention testamentary requests and they say it's not surprising that Congress would provide protections for family law matters but not testamentary requests. And there's a lot of things and Boggs I can't go over them all obviously it would take too long but Boggs really does cover most of those issues. It is a community property case but in the opinion it does say that it would cover all areas. And I think I think the executor mentioned that it was a non-participant that created the will but Boggs also indicates that it wouldn't matter the participant himself couldn't change it and neither could the non-participant. So I think it pretty much indicates that we're going to find now he does say Boggs preempts and also says that it's it's a violation of the anti-alienation clause so Boggs hits it both ways. And say and Griffin Griffin Griffin case is somewhat similar but in Griffin they use a 1056 a 1056-DA3 to do an after death quadro so in Griffin they found actually did find that there was an exemption that was based on 1056-DA3 as opposed to 1055. So what it really comes down to here is he says this he says the judge's order was not sufficient I think it is sufficient federal federal law is clear that she gets this property and he did have and he goes on to say well he couldn't have changed the beneficiary well yes he could have it's right on the facts on the agreed facts obviously if you look at the third party beneficiary act I mean it's just right in the act the act just says exactly what the situation is I didn't I don't know if that's particularly going to be argued here because it was difficult to say if it's de novo or manifest way to the evidence but certainly the manifest way to the evidence stands on my side and not on his based on the briefing and what we testified to the judge heard all these arguments I guess he's saying the judge didn't consider his arguments and he needed to go through a list of every statute and provision and in the retirement equity act to say all these things and all these reasons it should be denied I mean there's multiple reasons why why the court should have denied that recovery citation I don't know I really don't see I don't even see he also mentioned Shaw here these are the weird ones Shaw versus Delta in that case ERISA doesn't preempt New York's Human Rights Act or it's Disability Benefits Act so you know ERISA can't actually be preempted but not by a Wilbequest and travelers he mentions in that strange case an employer was sued by an employee for promising to give him insurance which he didn't give him it wasn't decided on ERISA because the employer and the employee didn't use didn't want to use ERISA in the case for other legal reasons but they do mention in that they do mention in that case that anyway it's not the issue is an indemnification case not really a case like we have here today which has no underlying contract it's just a simple gift that didn't get delivered and didn't come to completion and with no basis with no work being done didn't take care of his mother or kids didn't take care of him he didn't promise them anything that he was going to give them something you know for any consideration or anything else there was no expectation or reliance on it because the will could have been changed or the beneficiaries could have been changed at any time not at any time but at times certainly so I don't even see I don't understand the whole logic here behind what we're going for I guess he's saying that the law itself that ERISA is unjust because everything is following the law so he's attacking the law here and not the actions of the law he's saying the law is unjust and if that's true well I think he's better off really contacting this congressman and being able to change the law but I don't see how you can really avoid the statutory provisions of ERISA certainly you can't get rid of them by simply making a will request to cut out your spouse and give it all to your girlfriend or boyfriend or some charity somewhere that's certainly not what congress intended in the ERISA Act and I don't know how you get around that that's all I have oh I'm sorry question thank you thank you judge Mr. Moran we're both thank you your honor we're not attacking ERISA here matter of fact we've alleged that ERISA should be followed and that it paid out and once it paid out in a lump sum and couldn't be affected by this litigation that preemption didn't apply justice brought up the Anderson case Anderson case 4th district 1990 it was a federal employees group insurance policy there was a prenup where a wife a second wife was to get nothing from the estate only certain listed items but not the insurance policy the husband died the federal government by its regulations had to pay the proceeds to the second wife because she was the surviving spouse required that's why this is the same as ERISA and the appellate court in that instance said no we're not preempted we can look at the fairness of this circumstance and look that she signed a prenup that said I don't get part of that policy and awarded that policy amount to the family of the first wife in a case like this we as lawyers a lot of times we get bogged down in the law and when we have a case that involves equity we kind of get to  bottom of the case law and it says there has to be a liberal construction of the facts under a  citation and that the  has a wide range and a wide power to fashion remedies to make things that are fair would be my position that if we went around and went on tour to diners and taverns and feed stores and shopping malls in the 5th district went and asked people and gave them this  understanding that Lee Bedinger is awarded $75,000 out of this she gets 12.5% of that account even though she was less married for less than 4% of the time that the decedent was married if we laid this out to everybody and showed them that she wasn't being left destitute that she did have a  here this is not a circumstance where Tim Bedinger didn't think about his surviving and    court get reversed that this matter be remanded and that the citation issue to Lee Bedinger so she has to  those funds to the  court for distribution thank you  you all right we appreciate your arguments we'll consider the oral arguments today together with the arguments made in your briefs we'll take the matter under advisement issue to the decision in due course